## AGREEMENT AND GENERAL RELEASE

**Double-Time Transport, LLC ("Double-Time Transport")** and **Chrystal Asbury** ("Employee"), Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.     **Employee's Employment With Double-Time Transport.**     Employee's employment with Double-Time Transport ended on or about January 2, 2015.

2.     **Consideration.**  In consideration for signing this Agreement, and complying with its terms, Double-Time Transport agrees to pay to Employee a total of Eight Thousand Four Hundred and Fifty Five Dollars ($8,455.00) and to pay to Barrett & Farahany, LLP a total of Six Thousand Five Hundred and Forty Five Dollars ($6,545.00) according to the following schedule and breakdown:

     a.     Within ten (10) days after the Northern District of Georgia's approval of the Parties' Settlement Agreement or July 1, 2015, whichever is later, Double-Time Transport will pay to: a) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as wage income, less lawful deductions; b) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP One-Thousand, Six Hundred Thirteen Dollars and Twenty-Five Cents ($1,636.25) as non-wage income, to be reported as 1099 income.

     b.     On or before August 15, 2015, Double-Time Transport will pay to: a) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as wage income, less lawful deductions; b) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP One-Thousand, Six Hundred Thirteen Dollars and Twenty-Five Cents ($1,636.25) as non-wage income, to be reported as 1099 income.

     c.     On or before September 30, 2015, Double-Time Transport will pay to: a) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as wage income, less lawful deductions; b) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP One-Thousand, Six Hundred Thirteen Dollars and Twenty-Five Cents ($1,636.25) as non-wage income, to be reported as 1099 income.

     d.     On or before November 15, 2015, Double-Time Transport will pay to: a) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as wage income, less lawful deductions; b) Employee One-Thousand, Fifty Six Dollars and Eighty Seven Cents ($1,056.87) as non-wage income, to be reported as 1099 income; and c) Barrett & Farahany, LLP One-Thousand, Six Hundred Thirteen Dollars and Twenty-Five Cents ($1,636.25) as non-wage income, to be reported as 1099 income.

*ATL 20687895v1*

3.      **No Consideration Absent Execution of this Agreement.**  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

4.      **General and Mutual Release of All Claims.**   Employee knowingly and voluntarily releases and forever discharges Double-Time Transport, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former Employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their Employee benefit plans and programs and their administrators and fiduciaries, as well as insurers (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

- The Fair Labor Standards Act ("FLSA");

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;

- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;

- The Georgia minimum wage, recordkeeping and payday statutes—O.C.G.A. §§ 34-4-3, 34-2-11 and 34-8-2;

- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;

- any other federal, state or local law, rule, regulation, or ordinance;

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

Releasees knowingly and voluntarily release and forever discharge Employee and agents thereof, of and from any and all claims, known and unknown, asserted or unasserted, which the Releasees have or may have against Employee and agents thereof, as of the date of execution of this Agreement and General Release.

5.    **Acknowledgments and Affirmations.**  Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Double-Time Transport other than Case 1:15-cv-0128-ELR pending in the United States District Court, Northern District of Georgia.

Double-Time Transport affirms that it has not filed, caused to be filed, or is presently a party to any claim or counterclaim against Employee.

6.    **No Rehire/Employment Reference.**  Employee agrees not to seek any future employment with Double-Time Transport.  In the event that a prospective employer contacts Double-Time Transport for an employment reference for Employee, the Parties agree that Double-Time Transport will only provide dates of employment and/or positions held and/or rates of pay.

7.    **Non-Disparagement.**  The parties agree that they shall not make any oral or written statements, or engage in conduct of any kind, that disparages, criticizes, defames, communicates any false, negative or misleading information about one another, or any matter relating to Employee's relationship with Double-Time Transport, and/or, to the extent relevant, the circumstances surrounding Employee's lawsuit against Double-Time Transport, or otherwise casts a negative characterization upon the other party. The parties further agree that they will not assist anyone else in doing so, or direct or encourage another to do so.

8.    **Return of Property.**  Employee agrees to return to Double-Time Transport any patient files of Double-Time Transport's that are in her possession, custody or control. Employee further agrees to return to Double-Time Transport any emails in her possession, custody or control regarding any Double-Time Transport patients.  Employee further agrees to inform Double-Time Transport of any information in her possession, custody and control to

assist Double-Time Transport in locating and/or restoring any potential files or emails deleted by Employee regarding Double-Time Transport's patients.

9. **Governing Law and Interpretation.** This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

10. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

11. **Amendment**. This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

12. **Entire Agreement.** This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

IN WITNESS WHEREOF, the Parties knowingly and voluntarily sign this Agreement:

By: _____
Chrystal Asbury

Date: 6/12/15

Double-Time Transport, LLC
By: _____
Its: _____

Date: 21Jun15

4820-1872-4899, v. 2
ATL 20687895v1